Suzanne R. Varco, Bar No. 163304
Linda C. Beresford, Bar No. 199145
**OPPER & VARCO, LLP**
225 Broadway, Suite 1900
San Diego, California  92101
Telephone:  (619) 231-5858
Facsimile:  (619) 231-5853

Attorneys for Plaintiff, GREYHOUND LINES, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GREYHOUND LINES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VIAD CORP, a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT OF GREYHOUND LINES, INC. AGAINST VIAD CORP FOR COST RECOVERY UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION & LIABILITY ACT, BREACH OF CONTRACT, CONTRACTUAL INDEMNITY,  DECLARATORY RELIEF, AND PRIVATE NUISANCE** |

Plaintiff GREYHOUND LINES, INC. ("Plaintiff GLI" or "GLI"), complains and alleges as follows:

**PARTIES**

1.  Plaintiff GLI is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Dallas, Texas.  Plaintiff GLI has at all relevant times been authorized to do business in the State of Arizona, and has done and continues to do business in Arizona and within this District.

2.  Plaintiff GLI is the corporate successor to GLI Operating Company, a Delaware corporation, GLI Holding Company, a Delaware corporation, GLI Bus Operations Holding Company, a Delaware corporation, and GLI Merger Company, a Delaware corporation.

1  Unless otherwise indicated, further references to "Plaintiff" in this Complaint will refer to
2  Plaintiff GLI and its corporate predecessors.
3      3. Plaintiff GLI is informed and believes and thereon alleges that Defendant VIAD
4  CORP. ("Viad") is a corporation incorporated under the laws of the State of Delaware, having
5  its principal place of business in Phoenix, Arizona.  Plaintiff GLI is informed and believes and
6  thereon alleges that Defendant Viad was formerly known as The Greyhound Corporation, an
7  Arizona corporation.
8      4. Plaintiff GLI is informed and believes and thereon alleges that Transportation
9  Leasing Co. ("TLC"), who is not a named defendant in this complaint, was a corporation
10 incorporated under the laws of the State of California, having its principal place of business in
11 Phoenix, Arizona.  Plaintiff GLI is informed and believes and thereon alleges that TLC was
12 formerly known as Greyhound Lines, Inc., a California corporation, until a name change
13 occurred in 1987.  Plaintiff GLI is informed and believes and thereon alleges that TLC was a
14 wholly owned subsidiary of Defendant Viad until its dissolution in 2000, at which time Viad
15 assumed TLC's obligations, responsibilities and liabilities.  Therefore, unless otherwise
16 indicated, references to "Viad" or "Defendant" in this complaint include Defendant Viad, its
17 corporate predecessors, and TLC and its corporate predecessors, for which Viad has liability.
18     5. Plaintiff GLI is informed, believes and thereon alleges that at all relevant times
19 Viad is and was authorized to do business in the State of Arizona, that Viad has done business
20 in Arizona and within this District, and that Viad continues to do business in Arizona and
21 within this District.

## NATURE OF THE ACTION

23     6. Defendant Viad owned and operated multiple properties across the nation for
24 numerous decades before Viad sold those properties to Plaintiff.  Plaintiff alleges that
25 environmental contamination occurred at the properties during the time that Viad owned and
26 operated the properties, and therefore Viad is responsible to pay the costs to clean up such
27 properties.
28 ///

7. Plaintiff and Defendant Viad entered into certain contracts whereby Viad is obligated to provide indemnification to Plaintiff for certain environmental obligations arising prior to March 1, 1992.  Plaintiff alleges that Defendant Viad has corporate successor liability for all actions and obligations of TLC alleged in this Complaint.

## JURISDICTION

8. This Court has subject matter jurisdiction under 28 U.S.C. section 1331 because this matter arises under the laws of the United States, specifically under the Comprehensive Environmental Response Compensation & Liability Act, 42 U.S.C. § 9601 *et seq*.

9. This Court also has subject matter jurisdiction over Plaintiff GLI's claims brought under state law by virtue of the supplemental jurisdiction provided in 28 U.S.C. § 1367, and under the doctrine of pendent jurisdiction set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  Plaintiff GLI's claims under state law arise from the same nucleus of operative facts as the claims under federal law.

## VENUE

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 1391(b)(3) because a substantial part of the events giving rise to the claim occurred in this district and because there is no other district in which all actions alleged herein may be brought and Defendant is subject to the court's personal jurisdiction in this district.  Additionally, the terms of the contracts at issue in the case require all claims to be brought in Arizona.

## GENERAL ALLEGATIONS

11. Defendant Viad, through its predecessors, owned and operated multiple properties across the United States for numerous decades from approximately the 1950s to the 1980s. During the time that Viad owned and operated those properties, many of the properties became impacted with environmental contamination.

12. On or about December 22, 1986, the corporate predecessors to Plaintiff GLI (GLI Operating Company, GLI Holding Company, GLI Bus Operations Holding Company and GLI Merger Company) and the corporate predecessors to Defendant Viad (The Greyhound Corporation and Greyhound Lines, Inc.) entered into an Acquisition Agreement (the

1  "Acquisition Agreement"), whereby Plaintiff purchased certain assets and leases from
2  Defendant. The Acquisition Agreement was subsequently amended on January 31, 1987, and
3  again on March 18, 1987.

4      13. The Acquisition Agreement contemplated the sale of certain real property assets
5  from Defendant to Plaintiff.

6      14. The Acquisition Agreement provided that Defendant would indemnify Plaintiff for
7  any liability or obligation of Defendant, as well as any claim for property damage resulting
8  from Defendant's prior activities at the transferred properties.

9      15. A Third Amendment to Acquisition Agreement ("Third Amendment") was entered
10 into between Plaintiff and Defendant on March 18, 1987. The Third Amendment provided that
11 Defendant would indemnify Plaintiff for Defendant's proportionate share of costs, fees,
12 expenses, fines, penalties, or any governmental levies associated with environmental
13 remediation necessitated by leaking underground storage tanks and other hazardous substances
14 located at properties previously owned by Defendant which had been sold to Plaintiff.

15     16. The Third Amendment further provided that Plaintiff "shall not be obligated to bear
16 any costs, fees, expenses, fines, penalties or any other governmental levies associated with
17 remediation done in respect of leaks from such tanks . . . or for the actual costs or expenses of
18 remediation of the properties where such tanks are located . . . ."

19     17. After realizing that many of the properties which Plaintiff had acquired from
20 Defendant had environmental contamination, in or about August 1991, Plaintiff and Defendant
21 entered into a Claims Treatment Agreement which modified the indemnity provisions of the
22 Third Amendment. The Claims Treatment Agreement required Defendant to indemnify
23 Plaintiff for environmental liabilities which were identified prior to March 1, 1992.

24     18. On October 1, 1991, Defendant confirmed by letter sent to Plaintiff, the
25 proportionate allocation of Defendant's liability and obligation to pay for environmental
26 assessment and remediation costs associated with thirty-seven (37) properties identified in the
27 letter. A true and correct copy of the October 1, 1991 letter is attached as Exhibit A to this
28 Complaint.

19. Included in the 37 properties identified in the October 1, 1991 letter, Viad confirmed Defendant's proportionate share of environmental assessment and remediation costs with respect to the following five properties:

    a. Jacksonville, Florida, Location #4709/4710;

    b. Memphis, Tennessee, Location #4012/4013;

    c. Miami, Florida, Location #4721;

    d. Oakland, California, Location #8934; and

    e. Seattle, Washington, Location #7882.

20. On October 23, 1991, Viad confirmed Defendant's proportionate share of environmental assessment and remediation costs for the property located in Portland, Oregon, Location #7998. A true and correct copy of the October 23, 1991 letter is attached as Exhibit B to this Complaint. The five properties identified in paragraph 19, and the Portland site identified in this paragraph, will hereafter be referred to in this complaint as the "Listed Properties."

21. On March 10, 1999, Plaintiff and Defendant entered into a Settlement Agreement ("Settlement Agreement") whereby Defendant confirmed its indemnity obligations to Plaintiff for properties where Defendant was notified about contamination prior to March 1, 1992. The Settlement Agreement stated that Defendant would indemnify Plaintiff for:

> "any and all liabilities and obligations, whether statutory, regulatory, contractual, legal, financial or otherwise, relating to the physical or environmental condition of a Property . . . including but not limited to the presence, use or release of Hazardous Materials . . . at a Property, the migration of Hazardous Materials to or from a Property, the transportation of Hazardous Materials from a Property, or off-site disposal of Hazardous Materials which were kept, used or stored at a Property, regardless of whether such liability of obligation is predicated upon tort, contract, strict liability, warranty, Superfund, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, or any other state or

federal statute, law, ordinance, or other basis of liability for damage to the environment; . . . ."

22. Contamination by petroleum products and other hazardous substances has been identified at the Listed Properties.

23. As confirmed in the October 1 and October 23, 1991 letters, the contamination at the Listed Properties was identified prior to March 1, 1992, and Defendant had actual knowledge of the contamination at the Listed Properties prior to March 1, 1992.

24. Plaintiff has incurred and continues to incur substantial costs associated with the performance of assessment and remediation of contamination at the Listed Properties, which contamination was identified prior to March 1, 1992, and of which Defendant had actual knowledge prior to March 1, 1992.

25. Plaintiff has notified Defendant of its responsibility for these cleanup costs under federal statutes as well as its contractual indemnification obligation.  Plaintiff has demanded reimbursement for costs incurred by Plaintiff associated with the assessment and remediation of contamination at the Listed Properties.  Defendant has failed to meet its obligations under both its statutory obligations and the contracts to pay for the environmental costs incurred by Plaintiff at the Listed Properties.

## FIRST CAUSE OF ACTION

**(Cost Recovery under CERCLA, 42 U.S.C. § 9607, against Viad Corp)**

26. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 25 as though fully set forth herein.

27. Plaintiff alleges that Defendant is a "person" under 42 U.S.C. § 9601(21).

28. Plaintiff alleges that the Seattle property, Location #7882, 1250 Denny Way, Seattle, and the Miami property, Location#4721, 51 Northwest 11th Street, Miami, identified in paragraph 19 above, are "facilities" within the meaning of 42 U.S.C. § 9601(9).

29. Hazardous substances, as defined at 42 U.S.C. § 9601(14), including but not limited to, benzene, naphthalene, polynuclear aromatic hydrocarbons, cumene (isopropylbenzene), arsenic, chromium, and lead, have been released at the Miami property.

30. Hazardous substances, as defined at 42 U.S.C. § 9601(14), including but not limited to, benzene, naphthalene, polynuclear aromatic hydrocarbons, tetrachloroethene (PCE), TCA, and acetone, have been released at the Seattle property.

31. Plaintiff alleges that such hazardous substances were disposed of at the time Defendant owned and/or operated the Seattle and Miami properties and that Defendant is a responsible party as an owner and/or operator of the Seattle and Miami properties at the time hazardous substances were disposed of at those properties.

32. Plaintiff has incurred and will continue to incur necessary response costs, including costs of investigation, removal and/or remedial actions, in the investigation and clean up of the releases of hazardous substances at the Seattle and Miami properties.

33. All costs incurred or to be incurred by Plaintiff in connection with the investigation and remediation of the Seattle and Miami properties are necessary costs of response consistent with the National Contingency Plan.  Plaintiff's actions are consistent with the National Contingency Plan because, among other reasons, the investigation and remediation efforts have occurred with regulatory oversight and included public participation.

34. Defendant is jointly and severally liable to Plaintiff pursuant to 42 U.S.C. § 9607(a) for all of the past, present and future necessary costs of response incurred by Plaintiff to investigate and remediate the Seattle and Miami properties.

## SECOND CAUSE OF ACTION

### (Breach of Contract against Viad Corp)

35. Plaintiff realleges and incorporates each and every allegation contained in paragraphs 1 through 34 as though fully set forth herein.

36. Plaintiff entered into the Acquisition Agreement, the Third Amendment, the Claims Treatment Agreement and the Settlement Agreement (hereafter referred to collectively as the "Agreements") with Defendant, all of which require Defendant to indemnify Plaintiff for liabilities, losses, damages, and expenses arising out of, resulting from, or in connection with contamination located at the Listed Properties.

///

37. Pursuant to the Agreements, Defendant has a duty to indemnify Plaintiff for any such liabilities, losses, damages and expenses, including attorneys' fees.

38. Plaintiff has incurred costs relating to the assessment and remediation of contamination at the Listed Properties and has demanded reimbursement of such costs from Defendant.

39. Defendant has failed to reimburse such costs.

40. Defendant has breached, and continues to breach, the Agreements. Defendant's failure to reimburse costs for each of the Listed Properties is a separate and ongoing breach.

41. Plaintiff has performed all conditions required of it by the Agreements, except as may have been excused by reason of Defendant's breaches.

42. As a direct and proximate result of Defendant's breach of the Agreements, Plaintiff has been damaged in a sum greater than $6,000,000, the total of which is not yet known, but in an amount to be proven at time of trial.

43. Plaintiff's damages include, but are not limited to, costs incurred by Plaintiff relating to the investigation and remediation of environmental contamination at the Listed Properties. Plaintiff is continuing to be damaged, and will be required to spend additional sums for further investigation and remedial activity at the Listed Properties.

44. Plaintiff alleges that Plaintiff's damages are directly and proximately caused by Defendant's breach of the Agreements and is contributed to by the sole fault and/or negligence or other actionable conduct of Defendant via its historic operations at the Listed Properties.

45. It has been necessary for Plaintiff to employ attorneys to construe and enforce its rights under the Agreements, and Plaintiff is therefore entitled to reimbursement of its attorneys' fees and costs (as provided by the Agreements), according to proof at time of trial.

## THIRD CAUSE OF ACTION

**(Express Contractual Indemnity against Viad Corp)**

46. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 45 as though fully set forth herein.

///

47. Plaintiff entered into the Agreements with Defendant, all of which require Defendant to indemnify Plaintiff for liabilities, losses, damages, and expenses arising out of, resulting from, or in connection with contamination located at the Listed Properties.

48. The Agreements all contain express indemnity provisions, which require Defendant to indemnify Plaintiff for costs incurred, or to be incurred, relating to the investigating and cleaning up alleged environmental contamination at the Listed Properties.  As stated in the Settlement Agreement, Defendant expressly agreed to indemnify Plaintiff from "any and all liabilities and obligations, whether statutory, regulatory, contractual, legal, financial or otherwise, relating to the physical or environmental condition of a Property . . . including but not limited to the presence, use or release of Hazardous Materials . . . at a Property, the migration of Hazardous Materials to or from a Property, the transportation of Hazardous Materials from a Property, or off-site disposal of Hazardous Materials which were kept, used or stored at a Property, regardless of whether such liability or obligation is predicated upon tort, contract, strict liability, warranty, Superfund, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, or any other state or federal statute, law, ordinance, or other basis of liability for damage to the environment . . . ."

49. Pursuant to the Agreements between Plaintiff and Defendant described above, Defendant has a duty to indemnify Plaintiff for any and all liabilities, losses, damages, and expenses arising out of, resulting from, or in connection with contamination located at the Listed Properties.

50. Plaintiff has performed all conditions required of it by the Agreements, except as may have been excused by reason of Defendant's breaches alleged herein.

51. Plaintiff has made written demand, and by this Complaint intends further demand, upon Defendant for performance under the indemnity provisions of the Agreements.  Despite these demands, Defendant has failed, and continues to fail, to indemnify Plaintiff in accordance with the express terms of the Agreements.

52. Plaintiff is entitled to indemnity from Defendant as expressly provided by the Agreements for all costs incurred, and to be incurred, by Plaintiff in connection with the

contamination of soil and groundwater at the Listed Properties, including attorneys' fees where provided by the Agreements.

53. Plaintiff has incurred and continues to incur costs, expenses, and consulting and attorneys' fees in connection with construing and enforcing its rights under the Agreements. As a proximate consequence of Defendant's breach of the obligations under the Agreements, Plaintiff has suffered damages in an amount to be proven at trial.  Additionally, Plaintiff is entitled to reimbursement of its attorneys' fees and costs, according to proof at time of trial.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief – Express Indemnity against Viad Corp)

54. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 53 as though fully set forth herein.

55. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the rights and obligations of each party.  Plaintiff alleges that Defendant has an express contractual obligation to indemnify Plaintiff for all past and future costs and any and all other damages suffered by Plaintiff arising from or relating to soil and groundwater contamination located at the Listed Properties.  Plaintiff further alleges that pursuant to this express indemnification obligation, Defendant has an obligation to (i) compensate Plaintiff for all past and future expenses incurred by Plaintiff; and (ii) pay all damages or losses incurred by Plaintiff, arising out of, resulting from, or in connection with the contamination at the Listed Properties.  Plaintiff is informed and believes and thereon alleges that Defendant denies these allegations by Plaintiff.

56. A judicial declaration of these rights and obligations is necessary and appropriate in order to avoid further controversy, minimize loses, and promote judicial economy. Specifically, Plaintiff seeks a declaration that Defendant has an express contractual obligation to indemnify Plaintiff and an obligation to (i) compensate Plaintiff for all past and future expenses incurred by Plaintiff; and (ii) pay all damages or losses incurred by Plaintiff, arising out of, resulting from, or in connection with the soil and groundwater contamination at the Listed Properties.

57. Pursuant to 28 U.S.C. § 2201(a), this Court has jurisdiction to award declaratory relief. Plaintiff, therefore, requests a judicial determination if its rights, and the duties and obligations of Defendant, with respect to the contractual indemnification obligations between the parties.

58. Plaintiff has no other adequate or timely remedy at law.

59. It has been necessary for Plaintiff to employ attorneys to construe and enforce its rights under the contractual agreements between the parties, and Plaintiff is therefore entitled to reimbursement of its attorneys' fees, according to proof at time of trial.

## FIFTH CAUSE OF ACTION

### (Private Nuisance against Viad Corp)

60. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 59 as though fully set forth herein.

61. During the time that Defendant owned and/or operated the Listed Properties, petroleum and other hazardous substances were released into the soil and groundwater at the Listed Properties.

62. The existence of contamination in the soil and groundwater at the Listed Properties has interfered with Plaintiff's interest and enjoyment in its real property (the Listed Properties) and is therefore a private nuisance.

63. As a result of this nuisance, Plaintiff has incurred damages to assess and remediate the contamination at the Listed Properties.

64. Plaintiff seeks to recover the damages it has incurred to address the nuisance created at the Listed Properties by the Defendant.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant as follows:

1. For reimbursement of response costs to investigate and remediate hazardous substances at the Seattle and Miami properties under CERCLA;

2. For a declaration that Defendant is liable for all past and future response costs to investigate and remediate hazardous substances at the Seattle and Miami properties under CERCLA;

3. For damages in an amount to be proven at trial, equal to all losses, costs, and expenses incurred by Plaintiff arising from and relating to the contamination at the six Listed Properties as required by the Agreements;

4. For a declaration that Defendant is liable for all past and future investigation and remediation costs, liabilities or damages arising from the contamination at the six Listed Properties as required by the Agreements;

5. For damages incurred by Plaintiff to address the nuisance created by Defendant;

6. For all incidental and consequential damages, in an amount to be proven at trial;

7. For pre-judgment interest on all such damages at the maximum rate allowed by law from the time Plaintiff incurred the costs and damages;

8. For retention of jurisdiction of this action by this Court after entry of the requested declaratory judgment in order to grant Plaintiff such further relief against Defendant as may be necessary or proper to effectuate the declaration of this Court;

9. For costs and attorneys' fees; and

10. For such other and further relief as this Court may deem proper.

Dated this 11th day of September, 2015        OPPER & VARCO LLP

 /s/ *Suzanne R. Varco*
Suzanne R. Varco
Attorney for GREYHOUND LINES, INC.

# EXHIBIT A

# TRANSPORTATION LEASING CO.
A Dial Corp Company

1850 N. CENTRAL
PHOENIX, AZ 85004

October 1, 1991

RECEIVED
OCT 04 1991
ENVIRONMENTAL DEPT.

Mr. Van A. Hartnitt
Director of Environmental Management
Greyhound Lines, Inc.
P. O. Box 660362
Dallas, TX 75266

Dear Van:   RE: Reimbursement Allocations

Enclosed is a copy of your August 21, 1991, letter summarizing the allocations. TLC fully agrees with the listing, but with the understanding that GLI has not yet provided TLC evidence to support a 20 percent allocation at the following locations:

   Detroit, MI

   Las Vegas, NV

   New York, NY

   Portland, OR

   Sacramento, CA

   Salt lake City, UT

Your letter uses the notation of "submitted", but I do not have any documentation from you on the above six locations to allow an assignment of the 20 percent allocation to TLC. What I need from you in each case is either a state letter requesting GLI commence remediation or evidence that GLI has commenced remediation, which includes the assessments necessarily connected with remediation work.

My records further indicate the projects at Amarillo, Lubbock and Syracuse have been completed and can now be dropped from this listing.

Thanks for completing this summary, it was very helpful.

Sincerely,

Kenneth M. Ries
Director
Environment and Energy

KMR:gd
Enclosure
cc: R. E. Wilmoth



Greyhound Lines, Inc.
901 Main Street, Suite 2500
Dallas, Texas 75202

August 21, 1991

K.M. RIES
AUG 27 1991

Mr. Ken Ries
Director of Energy and Environment
Transportation Leasing Company
1850 N. Central
Phoenix, AZ  85004

Re:  Reimbursement Allocations

Dear Ken:

As a quick update and confirmation, please find below the locations and allocations I am currently working under. Also, please find below new Greyhound Lines Inc. facility numbers that were issued by the Tax Department (the new numbers will be in bold). These new numbers will be put into effect as soon as possible.

| Location: | Location #: | Allocation %: | Status: |
|---|---|---|---|
| Albany, NY-T/G, | Loc. #1506 | 60% | confirmed |
| Amarillo, TX | TNM&O | 100% | confirmed |
| Atlanta, GA-G, | Loc. #4106 | 80% | confirmed |
| Buffalo, NY-G, | Loc. #1518 | 100% | confirmed |
| Buffalo, NY-T, | Loc. #1521\**1522** | 60% | confirmed |
| Charleston, SC-T, | Loc. #3503 | 0% | will delete from list |
| Charleston, WV-T, | Loc. #2006 | 60% | confirmed |
| Chicago, IL-G, | Loc. #5606 | 60% | confirmed |
| Cincinnati, OH-G, | Loc. #2506 | 60% | confirmed |
| Cleveland, OH-G, | Loc. #2512 | 100% | confirmed |
| Cleveland, OH-T, | Loc. #2515\**2516** | 100% | confirmed |
| Columbus, GA-T, | Loc. #8072\**8069** | 20% | confirmed |
| Columbus, OH-T/G, | Loc. #2572 | 100% | confirmed |
| Dallas, TX-G (Lamar), | Loc. #6832 | 80% | confirmed |
| Detroit, MI-G, | Loc. #2403 | 20% | submitted |
| Evansville, IN-T, | Loc. #2603 | 60% | confirmed |
| Flagstaff, AZ-T/G, | Loc. #8612 | 60% | confirmed |
| Indianapolis, IN-G, | Loc. #2612 | 60% | confirmed |
| Indianapolis, IN-T, | Loc. #2609\**2611** | 60% | confirmed |
| Jacksonville, FL-G, | Loc. #4706 | 60% | confirmed |
| Jacksonville, FL-T, | Loc. #4709\**4710** | 100% | confirmed |
| Knoxville, TN-T, | Loc. #4006\**4007** | 0% | will delete from list |
| (Request for 100% made, <u>request dropped</u>) | | | |
| Las Vegas, NV-T/G, | Loc. #8722 | 20% | submitted |
| Los Angeles, CA-G, | Loc. #8941 | 60% | confirmed |
| Louisville, KY-T, | Loc. #3915\**3916** | 100% | confirmed |
| Lubbock, TX | TNM&O | 100% | confirmed |

```
Memphis, TN-T,           Loc. #4012\4013      60%              confirmed
Miami, FL.-G             Loc. #4721           60%              confirmed
   (Reduced from 100%)
New York, NY-G,          Loc. #1527           100%-20% of new release?
Oakland, CA-T,           Loc. #8934           100%             confirmed
Orlando, FL-T,           Loc. #4730           100%             confirmed
Paducah, KY-T,           Loc. #6347           20%              confirmed
Phoenix, AZ-T,           Loc. #8616           100%             confirmed
Portland, OR-G,          Loc. #7998           20%              submitted
Reno, NV-T/G,            Loc. #8726           100%             confirmed
Richmond, VA-T/G,        Loc. #3309           100%             confirmed
Sacramento, CA-G,        Loc. #8947           20%              submitted
Salt Lake City, UT-T/G,  Loc. #8510           20%              submitted
San Francisco, CA-G,     Loc. #8952           60%              confirmed
Seattle, WA-G,           Loc. #7882           60%              confirmed
Syracuse, NY-G,          Loc. #1539           100%             confirmed
Tallahassee, FL-T,       Loc. #8037\8040      100%             confirmed
Washington, DC-G,        Loc. #3202           100%             confirmed
```

I would appreciate your reviewing the above list and notifying me of any disagreements. I would also appreciate written confirmation of the locations and allocations. We can simply add or delete to the list as releases are discovered or closure letters are received.

Thank you for your help in this matter, and please feel free to contact me should you have any questions.

Sincerely,

*Van A. Hartnitt*

Van A. Hartnitt
Director of Environmental Management


VAH:ek

# EXHIBIT B

# TRANSPORTATION LEASING CO.
A Dial Corp Company

1850 N. CENTRAL
PHOENIX, AZ 85004

October 23, 1991

RECEIVED
OCT 28 1991
ENVIRONMENTAL DEPT.

Mr. Tom Portele
Greyhound Lines, Inc.
PO Box 660362
Dallas, TX   75266

RE: Portland, OR Garage #7998

Dear Tom:

Thank you for forwarding a copy of the September 1991 Engineering-Science Preliminary Site Assessment Report for the subject facility. This report satisfies the requirements for TLC allocation responsibility. TLC hereby assumes a 20 percent allocation of the cost of remediation work in connection with the leak.

Sincerely,

Kenneth M. Ries
Director
Environment and Energy

KMR:gd
cc: R. E. Wilmoth